United States Courts
Southern District of Texas
FILED

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

*November 19, 2020*

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES** | § | **CRIMINAL NO.** |
| | § | |
| **v.** | § | **4:20-cr-618** |
| | § | |
| **SANTIAGO MORA** | § | |

**INDICTMENT**

THE GRAND JURY CHARGES:

**COUNTS ONE - THREE**
**(Wire Fraud – 18 U.S.C. §1343)**

A.     INTRODUCTION

At all times material to this indictment:

1.     **SANTIAGO RAMIREZ MORA ("MORA")** was a resident in Harris County, Texas.

2.     Laspis Lazuli LLC, dba/ Alku Modern Jewelers ("ALKU") was a jewelry store located at 23501 Cinco Ranch Blvd, Suite J-110, Katy, Texas 77494. ALKU was owned by **MORA** and Juan Carlos Javadi ("Javadi"). MORA owned 50% of ALKU and Javadi owned the other 50% of ALKU.

3.     **MORA** managed the day to day operation of ALKU. Javadi lived in Sandy, Utah and was a silent partner of ALKU.

4.     In or around May of 2019, **MORA** did business with  Timez Investments Inc. ("Timez"). Timez is owned by Luis Miguel Miranda ("Miranda") and Johnny Yip ("Yip"). Miranda and Yip bought luxury watches from **MORA** and in return Timez would sell them for a

profit.

5.      Timez paid **MORA** approximately $8.8 million dollars for 855 watches and approximately 354 watches were not delivered by **MORA** to Timez. Approximately $3.92 million was due to Timez.

6.      **MORA** told Miranda and Yip he applied for a loan to repay Timez for the undelivered watches.

B.      THE SCHEME AND ARTIFICE TO DEFRAUD

7.      Beginning in or around May 2019 to in or around April 2020 in the Houston Division of the Southern District of Texas and elsewhere, the defendant,

**SANTIAGO RAMIREZ MORA**,

intentionally and knowingly devised and intended to devise a scheme and artifice to obtain money from receivables factoring companies, by means of material false pretenses, representations, and promises, in that the defendant submitted fraudulent merchant cash advance applications listing Javadi's identity and signature on the agreements without Javadi's knowledge and/or consent. **MORA** convinced the receivables factoring companies to fund merchant cash advances by using Javadi's identity as a principal owner. As a result, **MORA** failed to repay the receivables factoring companies the money owed and used the funds in order to repay previous debts and to obtain substantial economic benefits for his own personal use and benefit.

C.      MANNER AND MEANS OF THE SCHEME AND ARTIFICE

8.      On or about October 10, 2017, ALKU would and did open a business checking account with Frost Bank account x0396. On or about March 11, 2019, **MORA** and Javadi both had signatory authority on the account.

2

9.      **MORA** would and did apply for merchant cash advances using Javadi's personal information without Javadi's knowledge and/or consent.

10.     On or about September 17, 2019, **MORA** would and did submit a Working Capital Application to Everest Business Funding ("Everest") without Javadi's knowledge and/or consent.

11.     **MORA** would and did list Javadi as the principal owner, 100% owner, of ALKU on the Everest application. **MORA** would and did submit a picture of Javadi's driver's license with the application.

12.     On or about September 18, 2019, a Payments Right of Purchase and Sale Agreement was executed between ALKU and Everest. **MORA**, using Javadi's identity, would and did fraudulently agree to accept $275,000 from Everest. In return, ALKU would pay Everest approximately $2,389 dollars per day until $382,250 dollars had been paid back to Everest. **MORA** digitally signed the application for Javadi without Javadi's knowledge and/or consent.

13.     On or about September 18, 2019, **MORA** would and did have a pre-funding call with Everest. **MORA** did represent himself to be Javadi on the call. On the same day, $271,655 was deposited via wire transfer into ALKU's Frost Bank account number x0396. **MORA** owed approximately $267,110 dollars to Everest.

14.     On or about October 17, 2019, **MORA** would and did submit a Working Capital Application to Lendini without Javadi's knowledge and/or consent. The principal owners listed on the application were **MORA** and Javadi; each listed as owning 50% of ALKU. **MORA** digitally signed the application for himself and for Javadi without Javadi's knowledge and/or consent.

3

15.     On or about October 21, 2019, a Merchant Agreement was executed between ALKU and Lendini. **MORA** would and did fraudulently agree to accept $125,000 from Lendini. In return, ALKU would pay approximately $1,354 dollars per day until $178,750 dollars had been paid back to Lendini. **MORA** digitally signed the agreement for himself and for Javadi without Javadi's knowledge and/or consent.

16.     On or about October 21, 2019, Lendini deposited $123,305 via wire transfer into ALKU's Frost Bank account x0396. **MORA** owed approximately $135,416 dollars to Lendini.

17.     On or about October 17, 2019, **MORA** would and did submit a Working Capital Application to Green Capital Funding ("Green") without Javadi's knowledge and/or consent. The principal owners listed on the application were **MORA** and Javadi; each listed as owning 50% of ALKU. **MORA** digitally signed the application for himself and for Javadi without Javadi's knowledge or consent.

18.     On or about October 22, 2019, a Future Receivables Sale and Purchase Agreement was executed between ALKU and Green. **MORA** would and did fraudulently agree to accept $60,000 from Green. In return, ALKU would pay Green approximately $1,192 dollars per day until $89,400 had been repaid by ALKU. **MORA** digitally signed the agreement for himself and for Javadi without Javadi's knowledge or consent.

19.     On or about October 23, 2019, **MORA** would and did have a pre-funding call with Green. On the call, **MORA** represented himself to be Javadi. On the same day, Green deposited $55,127 dollars via wire transfer into ALKU's Frost Bank account number x0396. **MORA** owed approximately $49,468 dollars to Green.

20.     **MORA** would not have been able to obtain merchant cash advances from

Everest, Lendini, and/or Green Capital Funding without using Javadi's identity. As co-owners of ALKU, **MORA** and Javadi were also required to be co-guarantors on merchant cash advances obtained by ALKU.

21.     On or about April 27, 2020, Javadi conducted a recorded phone call with **MORA**. **MORA** admitted to using Javadi's identity to fraudulently apply for multiple merchant cash advances without Javadi's knowledge and/or consent.

D.     EXECUTION OF THE SCHEME AND ARTIFICE

22.     On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere, the defendant listed below, did aid and abet with others known and unknown to the grand jury, for the purpose of executing the aforementioned scheme and artifice to defraud and to obtain money by material false and fraudulent representations, pretenses, and promises, did intentionally and knowingly cause to be transmitted by means of wire communication in interstate or foreign commerce, the transfer of funds described below:

| Count | Date | Defendant | Wire Communication |
|-------|------|-----------|--------------------|
| 1 | 09/18/2019 | **SANTIAGO RAMIREZ MORA** | $271,655 wire transfer from Everest Business Funding to ALKU Frost Bank account x0396 for merchant cash advance. |
| 2 | 10/21/2019 | **SANTIAGO RAMIREZ MORA** | $123,305 wire transfer from Lendini to ALKU Frost Bank account x0396 for merchant cash advance. |
| 3 | 10/23/2019 | **SANTIAGO RAMIREZ MORA** | $55,127 wire transfer from Green Capital Funding to ALKU Frost Bank account x0396 for merchant cash advance. |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS 4-5
(Aggravated Identity Theft, Title 18 U.S.C. §§ 1028A and 2)

From on or about May 2019 through April 2020 , in the Houston Division of

the Southern District of Texas and elsewhere,

### SANTIAGO RAMIREZ MORA

aided and abetted by each other and others known and unknown to the Grand Jury,

did knowingly transfer, possess and use without lawful authority, a means of

identification of another person, to-wit, the name, date of birth, and social security

number of the persons named below, during and in relation to a violation of Title 18,

United States Code, Section 1343 (Wire Fraud):

| COUNT | DATE | NAME |
|-------|------|------|
| 4 | 9/18/19 | J.J. |
| 5 | 10/22/2019 | J.J. |

All in violation of Title 18, United States Code, Sections 1028A and 2.

### NOTICE OF CRIMINAL FORFEITURE
28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C)

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code,

Section 981(a)(1)(C), the United States gives notice to the defendant,

### SANTIAGO RAMIREZ MORA

that in the event of conviction of any of the offenses charged in Counts 1 through 3 of this

Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

## Money Judgment and Substitute Assets

Defendant is notified that upon conviction, a money judgment of at least $650,400 USD may be imposed against him. Defendant is further notified that in the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the Defendant up to the amount of the money judgment.

A TRUE BILL

Original Signature on file
FOREPERSON OF THE GRAND JURY

RYAN PATRICK
UNITED STATES ATTORNEY

By:  *Tina Ansari*

TINA ANSARI
Assistant United States Attorney
(713) 567-9000

7